**Eugenio GUERRA, Petitioner–
Appellant,**

v.

**Keith E. OLSON, Warden,\*
Respondent–Appellee.**

**No. 01–1895.**

United States Court of Appeals,
Seventh Circuit.

---

\* Keith E. Olson is substituted as appellee for the former warden Harley G. Lappin pursu-

ant to Fed. R.App. P. 43(c)(2).

Submitted Nov. 21, 2001.**

Decided Dec. 20, 2001.

Before POSNER, MANION, and ROVNER, Circuit Judges.

## ORDER

Eugenio Guerra is a Cuban national who arrived in this country in 1980 during the Mariel boatlift exodus from Cuba. The Immigration and Naturalization Service (INS) paroled Guerra pending a decision concerning his immigration status, but while on parole Guerra committed aggravated sexual assault in Texas. Upon completion of his state sentence, the INS revoked his immigration parole and took Guerra into custody. In November 1990, an immigration judge determined that Guerra was "excludable" and deportable on the basis of his criminal record, 8 U.S.C. § 1182(a)(2), but Cuba has refused to accept his return. Since then Guerra has been in federal prison. Pursuant to the Cuban Review Plan and 8 U.S.C. § 1226(e) (1994 ed.), the INS has annually reviewed his status and denied parole because his past criminal actions and his actions while detained demonstrate his continuing danger to the public.

Guerra filed a petition for a writ of habeas corpus ordering his immediate release on the ground that his detention violates due process and the right to be free from cruel and unusual punishment. The district court, citing our decision in *Carrera–Valdez v. Perryman*, 211 F.3d 1046 (7th Cir.2000), refused to issue the writ, and Guerra appeals.

The district court correctly relied on *Carrera–Valdez*. In that case, we ruled that another Mariel Cuban detained and found "excludable" by the INS because of his criminal endeavors while on immigra-

** After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

tion parole was not constitutionally entitled to release. *Carrera*, 211 F.3d at 1048. We explained that the Supreme Court's decision in *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956 (1953), was conclusive. In *Mezei*, the Court held that an excludable alien-one who technically has not been admitted into the U.S.-may be detained indefinitely when his country of origin will not accept his return: an excludable alien is treated, for constitutional purposes, as if stopped at the border. *Id.* at 213, 215. And because aliens stopped at the border are not protected by the Constitution, "whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Id.* at 212. (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544, 70 S.Ct. 309, 94 L.Ed. 317 (1950)).

■ For excluded Mariel Cubans, the procedure authorized by Congress to review their detention is the Cuban Review Plan, 8 C.F.R. 212.12, which, despite Guerra's assertions to the contrary, has been followed in his case. An INS panel has annually considered Guerra's circumstances and repeatedly found that his aggravated sexual assault conviction and his disciplinary infractions while detained warrant his continued detention. As we held in *Carrera–Valdez*, Guerra's conviction sufficiently supports the decision to keep him detained as a danger to the public; the additional infractions, which include a sexual assault on a female guard, make this an even easier case.

Our ruling in *Carrera–Valdez* is not affected by the Supreme Court's recent decision in *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), which holds that 8 U.S.C. § 1231(a)(6) (1994 ed., Supp. V) contains an implicit limitation on the executive power to detain aliens admitted to this country but subse-

quently ordered deported. *See Hoyte–Mesa v. Ashcroft*, 272 F.3d 989, 2001 U.S.App. LEXIS 25888, at *3–4 (7th Cir. 2001). In *Zadvydas*, the Court carefully distinguished the situation in *Mezei*, which involved excludable aliens like Guerra never deemed by law to have entered this country, from the one presented in *Zadvydas*, which involved aliens previously admitted to this country but then ordered removed. *Id.* at 2495. In doing so, the Court reaffirmed the "basic territorial distinction" between an alien who has entered the country and enjoys constitutional protections and one like Guerra, who the law deems to have been "stopped at the border," beyond the shelter of the Constitution. *Id.* at 2501.

Because *Mezei* maintains its vitality, and Guerra's case is indistinguishable from *Carrera–Valdez*, we AFFIRM.